IN THE SUPERIOR COURT



**FILED**
January 27, 2022 03:25 PM
SX-2019-CR-00200
TAMARA CHARLES
CLERK OF THE COURT

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** | |
| PLAINTIFF, | Case No: SX-2019-CR-00200 |
| v. | 20 V.I.C. § 504<br>14 V.I.C. § 924(2)<br>14 V.I.C. § 625(a)<br>20 V.I.C. §493(a)(1) and (b)(1)<br>20 V.I.C. §493(a)(2) and (b)(1) |
| **ELROY JOSEPH,** | 20 V.I.C. §492<br>20 V.I.C. §494(2) |
| DEFENDANT. | Cite as 2022 VI Super 12 |

**Appearances:**

**Esther R. Walters, Esq.**
Assistant Attorney General
Virgin Islands Department of Justice
213 Estate La Reine
Kingshill, St. Croix, USVI 00850
*For Plaintiff*

**Kye Walker, Esq.**
2201 Church Street
Suite #16AB, 2nd Floor
Christiansted, St. Croix, USVI 00820
*For Defendant*

## MEMORANDUM OPINION

**WILLOCKS, Presiding Judge**

¶1     **THIS MATTER** is before the Court on Elroy Joseph's (hereinafter "Defendant") Motion to Suppress Evidence of Blood Alcohol Content filed on November 22, 2019.

¶2     The Suppression Hearing was held on March 26, 2021. The Defendant filed a Supplemental Post-Hearing Argument Regarding Motion to Suppress Evidence of Blood Alcohol Content on March 30, 2021. For the reasons stated herein the court shall **DENY** Defendant's Motion to Suppress.

¶3     **DEFENDANT'S MOTION TO SUPPRESS**

¶4     Defendant moves for the suppression of the toxicology report and any and all evidence related to the toxicology exam and ask that Count Four, Driving under the Influence of an Intoxication Liquor (20 V.I.C. § 492(a)(1) and (b)(1)) and Count Five, Driving with a Blood Alcohol Content of 0.8 Percent or More (20 V.I.C. § 493(a)(2) and (b)(1)) be dismissed.

**I.     BACKGROUND**

¶5     Police officer Melford Murray (hereinafter "Officer Murray") stated that on December 16, 2018 at approximately 8:26 p.m., he was dispatched by the 911 VITEMA Virgin Islands Territorial Emergency Management Agency Call Center to an Auto Accident on Melvin H. Evans Highway and the Paradise Road intersection on the island of St. Croix, United States Virgin Islands. (See Affidavit ¶B). Officer Murray stated that he made contact with Defendant who was operating a 2016 brown Toyota Corolla and saw passengers trapped inside Defendant's vehicle. (See Affidavit ¶C). St. Croix Rescue Squad was requested to extricate the occupants. (See Affidavit ¶C). Officer Murray traveled to the hospital to interview the occupants and stated that he observed Defendant sleeping in room #7 at the Governor Juan F. Luis Hospital Emergency Room and was unable to talk. (See Affidavit ¶F).

¶6     Officer Murray stated that while at Juan Luis Hospital Emergency Room on December 16, 2018, he smelled an odor of alcoholic beverage coming from Defendant's breath because he was breathing heavily while asleep. (See Affidavit ¶F). Officer Murray stated that this gave him reasonable suspicion to believe that Defendant may have consumed an alcoholic beverage(s) but was unable to interview or perform any standardized field sobriety tests (SFST's) on Defendant due to the fact he was trapped inside his vehicle on the scene and at the hospital he was medicated and was sleeping. (See Affidavit ¶Q).

¶7     Thereafter, Officer Murray stated he contacted Dr. Wayne Marchant (hereinafter "Dr. Marchant") and advised him of Defendant's accident along with a strong odor of an alcoholic beverage

on his breath. (See Affidavit ¶G). Officer Murray stated that he requested a Blood Alcohol Level of

Defendant and told Dr. Marchant he would subpoena Defendant's medical record to determine the

percentage of the blood alcoholic content and/or other drugs in his system. (See Affidavit ¶G).

¶8 On April 11, 2019, Officer Murray requested a medical search warrant via the Attorney

General's Office for the Blood Alcohol Content of Defendant, and on April 12, 2019, a Judge of the

Superior Grant granted the same. (See Affidavit ¶U). On April 18, 2019, Officer Murray served the

warrant on Ineke Franklin who is the H.I.M Director at the Governor Juan F. Luis Hospital and

received the result of Defendant. (See Affidavit ¶U). The result of Defendant's Blood Alcohol Level

on May 6, 2019 was 0.229 unites (BAC). (See Affidavit ¶U).

## II.    LEGAL STANDARD

¶9 The Fourth Amendment to the United States Constitution protects an individual's right to

security in his person, home, papers, and effects and specifically against "unreasonable searches and

seizures."[1] Generally, for a search warrant to be reasonable under the Fourth Amendment, it must be

effectuated with a warrant based on probable cause, unless it is justified by a "specifically established

and well delineated exception to the warrant requirement." *People of the Virgin Islands v. Woodley*,

2018 V.I. LEXIS 61 (Super. Ct. 2018) (citing *Coolidge v. NH*, 403 U.S. 443, 454-55 (1971)).

¶10 The Fourth Amendment analysis typically proceeds in three stages. First, the Court determines

whether a Fourth Amendment event, such as a search or seizure, has occurred. *People v. Gerald*, 2020

V.I. LEXIS 81 (Super. Ct. 2020). Next, the Court considers whether that search or seizure was

reasonable. *Id.* If the search or seizure was unreasonable, the Court must then determine whether the

circumstances warrant suppression of the evidence. *Id.*[2] In order to pass constitutional muster, a

---

[1] The Fourth Amendment to the United States is applicable in the U.S. Virgin Islands pursuant to the Revised Organic Act of 1954, §3, 48 U.S.C. §1561.
[2] (citing *People of the V.I. v. Graham*, SX-18-CR-130, 2020 V.I. LEXIS 12 (Super. Ct. Feb. 11, 2020) (quoting *United States v. Smith*, 575 F.3d 308, 312-13 (3d. Cir. 2009)).

warrantless search must be shown to fall within one of the few narrowly defined exceptions to the warrant requirement. *People v. Gerald*, 2020 V.I. LEXIS 81 (Super. Ct. 2020) (citing *Government v. Fabiani-Ogno*, 20 V.I. 404 (Terr. Ct. 1984)).

¶11 On a motion to suppress evidence, the accused must move to suppress evidence that is thought to be illegally obtained. *Id.* at 11-12.[3] Once it is shown that a search or seizure was conducted without a warrant, the burden bears to the People to demonstrate by clear and convincing evidence that the government activity fell within some recognized exception to the warrant requirement. *Id.* at 11-12.[4]

## III. DISCUSSION

a. <u>The issue is whether Officer conducted an illegal search when he directed Dr. Marchant to obtain a blood alcohol level of Defendant without a warrant, and, whether this falls within the exigent circumstances exception to the warrant requirement or other warrantless search exception?</u>

¶12 In most cases, the government must apply for and receive a search warrant before seeking the collection of evidence from the person of an individual. See *People of the Virgin Islands v. Hardcastle*, 55 V.I. 93 (Super. Ct. 2011). It is well-established law that the Fourth Amendment is implicated when a search involves an intrusion into the human body. See *United States v. Flanders*, 2010 U.S. Dist. LEXIS 96752 (D.V.I. September 15, 2010). Here, the Fourth Amendment is implicated because a warrant had not been obtained when Officer directed Dr. Marchant to take the blood sample of Defendant. (See Affidavit ¶G; see also *Missouri v. McNeely*, 569 U.S. 141 (2013) (Where the issue was a compelled physical intrusion beneath McNeely's skin and into his veins to obtain a blood sample the court held that a warrantless search is reasonable only if it falls within a recognized exception).

---

[3] (citing *Government v. Morton*, 15 V.I. 418 (T. Ct. 1978); *Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980)).

[4] (citing *Morton*, supra.; *McDonald v. United States*, 335 U.S. 451, 69 S. Ct. 191, 93 L. Ed. 153 (1948); *United States v. Jeffers*, 342 U.S. 48, 72 S. Ct. 93, 96 L. Ed. 59 (1951).

¶13     The United States Supreme Court has given guidance on this issue. In *Mitchell v. Wisconsin*, Petitioner was arrested for operating a vehicle while intoxicated after a preliminary breath test registered a blood alcohol concentration (BAC) triple Wisconsin's legal limit for driving. See *Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019). By the time Petitioner reached the station, he was too lethargic for a more reliable test, so, the officer took him to a nearby hospital for a blood test. *Id.* Petitioner was unconscious by the time he reached the hospital, and his blood was drawn at a level above the legal limit. *Id.* Petitioner moved to suppress the results of the blood test. *Id.* The issue was what a police officer must do in a narrow but important category of cases: those in which the driver is unconscious and therefore cannot be given a breath test. *Id.*

¶14     The Court in *Mitchell* held when a driver is unconscious, the general rule is that a warrant is not needed. *Id.* A blood draw is a search of a person, so the court analyzed whether the administration without a warrant was reasonable. *Id.* And, when a breath test is unavailable to advance those aims, a blood test becomes essential. *Id.* Petitioner's stupor and eventual unconsciousness also deprived officials of a reasonable opportunity to administer a breath test. *Id.* The Court held that the general importance of an interest in combating drunk driving did not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case. *Id.* The Court, first pointed to highway safety as a vital public interest. Second, the Court highlighted that when it comes to fighting these harms and promoting highway safety, federal and state lawmakers have long been convinced that specified BAC limits make a big difference. *Id.* Third, the Court stated that enforcing BAC limits obviously requires a test that is accurate enough to stand up in court, and extraction of blood samples or testing is highly effective means of measuring the "influence of alcohol."[5] Thus, the warrant requirement falls within an exception where: (1) BAC

---

[5] *See also Missouri v. McNeely*, 569 U.S. 141 (U.S. 2013).

evidence is dissipating and (2) some other fact creating pressing health, safety, or law enforcement needs that would take priority over a warrant application. *Id.*

¶15     This court finds the facts are quite similar to the instant matter, and, where Officer could not obtain any of the three standardized sobriety tests, he went to the hospital to direct Dr. Marchant for a blood draw. Defendant argues that the procedure for obtaining a search warrant was violated because it should have been obtained prior to the blood draw. (See Def.'s Mot. Suppress p. 5). In addition, Defendant presented an argument that there was no probable cause in the first place. (See Def.'s Mot. Suppress p. 7). However, the instant matter could properly be characterized as an exception to a warrantless search by consent.

¶16     In *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185 (2016), the Supreme Court of the United States stated, "[i]t is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be failed inferred from context." (citations omitted). The Supreme Court held, "Our prior opinions have referred approvingly to the general concept of implied-consent law that impose civil penalties and evidentiary consequences on motorists who refuse to comply . . . [N]othing we say here should be read to cast doubt on them". *Id.* (citations omitted.). The Supreme Court recognizes that consent be given in multiple ways including implied consent by law. See *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). Defendant gave consent to be searched when he drove on the roads of the Virgin Islands with the appearance of being under the influence. (See Affidavit)

¶17     Pursuant to Title 20 V.I.C. § 493c, a driver has given his consent to a chemical test by driving, operating, or having under his physical control a motor vehicle in the Territory. (See 20 V.I.C. § 493c(a)). Under that statute a police officer is permitted to administer a chemical test for the purpose of determining the alcoholic or drug content of blood if the testing is incidental to lawful arrest of person who was driving while under the influence of intoxicating liquors or controlled substances.

(See 20 V.I.C. § 493c(a)). Defendant in the instant matter was operating a vehicle on December 16, 2018 and was suspected of driving under the influence. (See Affidavit ¶B & ¶G).

¶18    Title 20 V.I.C. 493c governs when and how a Virgin Island police officer can administer a chemical test to a driver. The statute has three relevant sections for this instant matter. The first section is 493c(a) that provides, "[a]ny person who drives, operates, or has under his physical control a motor vehicle in the Territory shall be deemed to have given his consent to chemical testing of his blood, breath or urine for the purpose of determining the alcoholic or drug content of his blood, provided that such testing is incidental to a lawful arrest and administered at the direction of a police officer having reasonable cause to believe such person has violated subsection (a) of section 493 of this chapter and within two hours after such person has been placed under arrest for any such violation." (See 20 V.I.C. § 493c(a)).

¶19    The second relevant section is 493c(d) that provides, "[a]ny person who is unconscious or otherwise in a condition rendering him incapable of refusing to take the chemical test or tests required by this section shall be deemed not to have withdrawn his consent and such test or test may be administered whether or not the person is informed as specified in subsection (b) hereof." (See 20 V.I.C. § 493c(d)).

¶20    The third relevant section is 493c(h) that provides, "[u]pon the trial of any criminal action, or preliminary proceeding in a criminal action, arising out of acts alleged to have been committed by any person in violation of paragraph (1) of subsection (a) of section 493 of this chapter while under the influence of a controlled substance, the results of any chemical test or tests administered pursuant to this section shall be admissible into evidence when otherwise admissible." (See 20 V.I.C. § 493c(h)).

¶21    It is undisputed that Officer ordered Defendant's blood to be drawn while he was unconscious. (See Affidavit ¶F & ¶G). However, 20 V.I.C § 493c(d) provides that if a person is unconscious or otherwise in a condition that makes him unable to refuse to take a chemical test, his consent is not

considered withdrawn by law. Title 20 V.I.C. § 493c(d) continues by stating that tests may be administered whether or not the person is informed. Further, based on the testimony of Officer Murray, that eye witness stated he was drinking at the party, gives a basis for a field sobriety test. However, given the situation, Officer Murray had no other alternatives than to request blood be screened for alcohol content. In *People of the Virgin Islands v. Caesar*, No. ST-2015-CR-186, 2016 LEXIS 18, at *7 (V.I. Super. Ct. Mar. 4, 2016), the Superior Court of the Virgins Island stated that, "If a person gives free and voluntary consent to a search, a warrantless search is considered constitutionally valid. Consent can be express, implied by the circumstances surrounding the search, the person's prior actions or agreements, or the person's failure to object to the search." Defendant consented to the search by operating his vehicle on December 16, 2018. (See Affidavit ¶B & ¶C; see also 20 V.I.C § 493c(d)).

## IV. CONCLUSION

¶24    In conclusion, the Court shall **DENY** Defendant's Motion to Suppress based upon Title 20 V.I.C. § 493c et al. Officer Murray had the right to administer a chemical test to Defendant. There was probable cause that Defendant had been driving under the influence. When Officer Murray asked the Doctor to determine the blood alcohol content in the Defendant, it was done with the implied consent pursuant to Title 20, Section 493c of the Virgin Islands Code. Defendant's incapacity does not negate the implied consent to chemical tests. Due to the lawful search upon the Defendant, the Motion to Suppress will be denied.

Accordingly, it is hereby:

**ORDERED** that Defendant's Motion to Suppress shall be **DENIED.**

  **DONE and so ORDERED this** __27ᵗʰ__ **day of** __January__ **2022.**

              HAROLD W.L. WILLOCKS
          **Presiding Judge of the Superior Court**

**ATTEST:**
Tamara Charles, Clerk of Court

_____
Date

_____
Court Clerk Supervisor Signature

PEOPLE OF THE VIRGIN ISLANDS,

PLAINTIFF,

v.

ELROY JOSEPH,

DEFENDANT.

Case No: SX-2019-CR-00200

20 V.I.C. § 504
14 V.I.C. § 924(2)
14 V.I.C. § 625(a)
20 V.I.C. §493(a)(1) and (b)(1)
20 V.I.C. §493(a)(2) and (b)(1)
20 V.I.C. §492
20 V.I.C. §494(2)

Cite as 2022 VI Super 12

## ORDER

**AND NOW**, for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's Motion to Suppress filed on March 30, 2021 is **DENIED**.

**DONE and so ORDERED this** 27th **day of January, 2022.**

_____
HAROLD W.L. WILLOCKS
**Presiding Judge of the Superior Court**

**ATTEST:**
Tamara Charles, Clerk of Court

_____
Date

_____
Court Clerk Supervisor